UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MAI TL, INC. D/B/A BAYMONT INN & SUITES | CASE NO. 2:23-CV-5617 |
| V. | JUDGE ELDON E. FALLON |
| VELOCITY RISK UNDERWRITERS, LLC, ET AL | MAGISTRATE JUDGE MICHAEL NORTH |

**ORDER & REASONS**

Before the Court is a motion by Defendant Access Restoration Services U.S., INC. ("ARS") to Stay Proceedings Pending Arbitration. R. Doc. 7. Having considered the briefing and the applicable law, the Court rules as follows.

**I.   BACKGROUND**

This case arises out of alleged damage to a hotel owned by Plaintiff Mai TL, Inc. due to Hurricane Ida. R. Doc. 1-3 at 4-5. Defendants include a group of insurance companies who jointly subscribe to the insurance policy (the "Policy") obtained by the Plaintiff. *Id.* at 3.

Additionally, on August 31, 2021, Plaintiff and Defendant ARS executed a Work Authorization Agreement (the "Agreement") in which ARS was to provide emergency mitigation services at the property. *Id.* at 10. Thereafter, an issue on claims adjustment occurred which triggered the present matter. Plaintiff filed suit against its insurers for breach of the Policy and statutory obligations. *Id.* at 12-17. Regarding ARS, Plaintiff seeks reimbursement for payments made to ARS by the defendant insurers for the mitigation work it completed pursuant to the Agreement. *Id.* at 11-12, 17-19.

On August 28, 2023, Plaintiff filed suit in the 24th Judicial District Court for Parish of Jefferson. *Id.* at 1. One day later, Celtic Bank Corporation ("Celtic")—Plaintiff's mortgage holder—filed a Petition to Intervene in the litigation. R. Doc. 1-3 at 55. In its petition, Celtic alleges

1

claims against the plaintiff, defendant insurers, and ARS for debts related to the hotel. *Id.* Specifically, Celtic alleges that it is entitled to any payment made or due from the defendant insurers, including those made to ARS. *Id.* On September 28, 2023, the defendant insurers removed the case to this Court. R. Doc. 1. On November 7, 2023, ARS filed the instant motion. R. Doc. 7.

## II.   PRESENT MOTION

In its motion, ARS argues that this matter must be stayed pending arbitration pursuant to "Dispute Resolution" clause in the Agreement. R. Doc.7-1.  Relevant parts of that clause state:

> If a dispute shall arise between ARS and Owner with respect to any matters of questions arising out of relating to this Agreement or the breach thereof, such dispute, other than collection matters, shall be decided by arbitration administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

R. Doc.7-4 at 1.

Because Plaintiff's claims arise out of the Agreement, ARS argues that Plaintiff violated the arbitration clause by instigating a lawsuit. R. Doc. 7-1 at 2. ARS further argues that the instant matter also violates the arbitration agreement set forth in the Policy between Plaintiff and the defendant insurers. *Id.*; *See* R. Doc. 1-4 at 37. Lastly, ARS argues that a stay of Celtic's intervention claims is proper because such claims are intertwined with the claims asserted against ARS and the insurers. *Id.* at 8. Accordingly, ARS prays that this Court grant its motion to stay the entire litigation pending arbitration of Plaintiff's claims against ARS and the insurers. *Id.* at 9.

Plaintiff has not filed an opposition memorandum.

## III.   LAW AND ANALYSIS

### a.   Whether Plaintiff and ARS Must Submit to Arbitration

Section 2 of the FAA provides, in relevant part, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or

transaction ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2. There is a strong presumption in favor of arbitration for arbitrable disputes. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Bhatia v. Johnson*, 818 F.2d 418, 421 (5th Cir. 1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985)). When considering a motion to compel arbitration under the FAA, the court's inquiry consists of three steps. *See Mitsubishi Motors Corp.*, 473 U.S. at 626; *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). First, the court must determine whether a valid agreement to arbitrate exists between the parties. *Gaskamp*, 280 F.3d at 1073. Next, it will examine "whether the dispute in question falls within the scope of that arbitration agreement." *Id.* If the first two steps are answered affirmatively, the court must ultimately consider "whether 'any federal statute or policy renders the claims nonarbitrable.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (quoting *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007)).

First, Plaintiff and ARS signed the Work Authorization Agreement and Plaintiff's claims for reimbursement from ARS fall within the scope of claims identified as arbitrable under the parties' Agreement. Plaintiff does not appear to dispute this.

Second, ARS contends that the Agreement between it and the Plaintiff is valid and enforceable under state law. The Court finds ARS' argument persuasive. Louisiana law acknowledges the right to freely contract. La. Civ. Code art. 1971. Under Louisiana law, a valid and enforceable arbitration agreement must contain the elements of offer and acceptance. La. Civ. Code art. 1927. In this instance, ARS offered the Agreement as a condition of its emergency mitigation services at the hotel and by signing the Agreement, Plaintiff accepted the offer. Accordingly, it cannot be convincingly disputed that an arbitration clause exists, and that the Agreement covers Plaintiff's claims.

Further, the Court does not find any federal statute or policy that would render the claims nonarbitrable. Moreover, Plaintiff fails to bring to the Court's attention of a federal policy that suggests otherwise. Because all three steps of the Court's inquiry favor arbitration, the Court finds that the ARS and the Plaintiff must submit to arbitration.

### b. Whether Plaintiff and the Defendant Insurers Must Submit to Arbitration

The Court further finds that Plaintiff and the defendant insurers must submit to arbitration. As highlighted by ARS, the Policy between the defendant insurers and plaintiff also contains an arbitration clause. R. Doc. 1-4 at 37. Because at least one of the defendant insurers is a foreign party, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") dictates the court's review. "In determining whether the Convention requires compelling arbitration in a given case," the Court "conduct[s] only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). An agreement "falls under" the Convention and the Court should compel arbitration only if four prerequisites are met: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Id.* (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat' l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985)); 9 U.S.C. § 202. Federal policy and precedent emphasize a strong presumption in favor of the enforcement of arbitration clauses. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."). This policy is applied with "special force" on arbitrations under the Convention. *See Mitsubishi Motors Corp.*, 473 U.S. at 638-40.

Here, the Court finds that the requirements to compel arbitration under the Convention are met. First, the Policy contains a written agreement to arbitrate in Section H of the Policy. R. Doc. 1-4 at 37. Second, that clause provides for arbitration in a signatory nation—the United States. *Id.* Third, the agreement to arbitrate is rooted in a commercial legal relationship because it can be found in an insurance policy issued to a business. *Id.*; *see also 3155 Dauphine LLC v. Indep. Specialty Ins. Co.*, No. 23-2213, 2012 WL 6293818, *1, *5 (E.D. La. Sept. 26, 2023) ("[T]he arbitration agreement arises from a commercial legal relationship because it is contained in an insurance policy issued to a business."). Lastly, at least one defendant insurer is a foreign citizen. R. Doc. 8 at 3. For instance, RenaissanceRe Corporate Capital Limited. *Id.* Further, Plaintiff does not argue that the arbitration clause in the Policy is unenforceable or invalid. Accordingly, the Court will compel arbitration regarding Plaintiff's claims against the defendant insurers.

### c. Whether Celtic's Claims are Referable to Arbitration

Pursuant to Section 3 of the FAA, the Court finds that a stay of Celtic's claim is also mandatory.[1] 9 U.S.C. § 3. Law binding on this court holds that claims alleged by a non-signatory to an arbitration agreement are "referable to arbitration" when such claims are "so closely related to the arbitration and would have such an impact on the arbitration as to make a stay mandatory under [9 U.S.C.] section 3." *Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709, 727 (E.D. La. 2015). The Fifth Circuit provides three factors for courts to consider when invoking § 3 on a non-signatory. First, "the arbitrated and litigated disputes must involve the same operative facts." *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir.

---

[1] 9 U.S.C. § 3 provides that "If any suit or proceeding be brought in any of the courts of the Untied States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

2004). Second, "the claims asserted in the arbitration and litigation must be 'inherently inseparable.'" *Id.* Third, "the litigation must have a 'critical impact on the arbitration.'" *Id.* (internal citation omitted).

Though Plaintiff and Celtic do not oppose a stay of this matter, the Court briefly describes why a mandatory stay is warranted. The first two factors are quickly disposed of. Celtic's claims and indisputably involve the same operative facts as Plaintiff's claims. The crux of this matter hinges on claims adjustment issues between Plaintiff, Celtic, and the defendants from Hurricane Ida damage. Plaintiff seeks reimbursement from ARS for issues and damages for breach of contract and statutory obligations of the defendant insurers. Similarly, Celtic—as Plaintiff's Mortgage Holder—seeks amounts owed to it by Plaintiff and maintains that it is entitled to any payment due or made from the defendant insurers, including those made to ARS.[2] The nexus of both Plaintiff and Celtic's petitions involves the same operative facts. Further, the subject matter of Celtic and Plaintiff's claims is "inherently inseparable" as it relates to disputes arising from the hurricane damage to the property. *Id.* at 343. Accordingly, the Court finds that the first two factors favor a mandatory stay.

Moving on to the final factor, allowing Celtic's claims to proceed in litigation runs the risk of inconsistent results, given its overwhelming similarity to the claims subject to arbitration. Additionally, it could lead to Court having a strong influence on the arbitration. *Id.* at 345 (holding that "[g]iven the binding effect of a federal judgment, an arbitrator would necessarily be strongly influenced to follow the court's determination") (cleaned up). Because litigation of Celtic's claims

---

[2] Pursuant to the UCC Financing Statement between Plaintiff and Celtic, Celtic maintains a security interest in all insurance proceeds which are payable to Plaintiff. R. Doc. 1-3 at 55-56. Additionally, Pursuant to the Mortgage between Plaintiff and Celtic, Celtic alleges that it has the right to insurance proceeds which protect the property. *Id.* at 56.

would have a "critical impact" of arbitration, the Court finds that the last factor of the Fifth Circuit test is met. *Id.* at 343. Thus, the Court holds that a mandatory stay of Celtic's claims is required pending the outcome of the arbitration of Plaintiff's claims.

### IV.   CONCLUSION

For the foregoing reasons, ARS' Motion to Stay Proceedings Pending Arbitration, R. Doc. 7, is **GRANTED**. Plaintiff's claims against Defendants are hereby **REFERRED** to arbitration. Accordingly, the matter is **STAYED AND ADMINISTRATIVELY CLOSED** until arbitration is completed.

New Orleans, Louisiana this 14th day of December, 2023.

_____
United States District Judge